UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN HAMM,

     Plaintiff,

                                Case No. 22-11456

vs.                            HON. GEORGE CARAM STEEH

PULLMAN SST, INC.,

     Defendant.
_____/

OPINION AND ORDER DENYING DEFENDANT'S
MOTION TO DISMISS AMENDED COMPLAINT (ECF No. 5)

On June 7, 2022, plaintiff Kevin Hamm filed a complaint in state court against defendant, alleging employment discrimination and retaliation under the Elliot-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101 et seq. and Title VII of the 1964 Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e, *et seq*. Defendant Pullman SST, Inc. ("Pullman") removed the case to federal court on June 29, 2022. ECF No. 1. On July 6, 2022, defendant filed a motion to dismiss plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 2. Plaintiff filed an amended complaint adding more detailed factual allegations and the Court denied defendant's motion to dismiss as moot and without prejudice. ECF No. 4. The matter is now

before the Court on defendant's motion to dismiss plaintiff's amended complaint pursuant to Rule 12(b)(6). ECF No. 5. For the reasons stated below, defendant's motion to dismiss is denied.

## BACKGROUND FACTS

Plaintiff is a bi-sexual male. He began working for defendant in July 2020 as a laborer on the Michigan Central Station Project. Plaintiff alleges that his co-workers and supervisor began to direct homosexual slurs at him beginning in November 2020. Plaintiff states that these unwelcome comments based on his sexual orientation were a daily occurrence. In his amended complaint, plaintiff lists some of the treatment he was subject to:

- Plaintiff recalls being called "Kevin Bacon", a gay man who was brutally murdered in Michigan in 2019. Plaintiff was physically threatened and intimidated by his co-workers as the "Kevin Bacon gay faggot that was chopped up" and how Plaintiff reminded them of him, implying Plaintiff should be chopped up.
- Plaintiff was asked [i]f he was going to make out with a guy from a different company, because they were talking to each other.
- Plaintiff was asked if he "jacked off" in his car during his break and that the company was buying a new gunite machine for him.
- Plaintiff was told to "stand you gay ass there I'll come unglued if you move".
- Plaintiff was called a "fucking faggot"

- During the confrontation, Plaintiff was called a "fucking faggot" by Mr. Martinus and taunted to the point of Plaintiff feeling sick.
- Plaintiff was called a Homo because he had to rest his neck.
- Plaintiff's car was defaced with the phrase "fuck Kevin" scratched into it.
- Plaintiff was asked "Are you into fitness? Fitness di*k in your mouth".
- Plaintiff was told to sit on the Safety Persons di*k.
- Co-workers pretend to cough the word "faggot".
- Plaintiff was asked if he would "suck a di*k if it was washed or cleaned.
- Plaintiff was referred to as a dirty co*k sucker.
- Plaintiff was told to hurry his gay as* up and finish this sh*t.
- Plaintiff was directed to get off the job and fu*k himself.

ECF No. 3; Am. Compl. ¶14.

Plaintiff states that he first complained to management about the homosexual slurs on or around February 12, 2021, including telling Construction Manager Chad Ruff about his co-workers comparing him to a gay man named Kevin Bacon who was brutally murdered for being a homosexual. Despite his plaintiff's report of harassment, defendant allegedly failed to investigate or take remedial action. Am. Compl. ¶¶ 13, 16.

Plaintiff further alleges that he was involved in a confrontation with his supervisor Brian Martinus on April 29, 2021. On this date, plaintiff told

Martinus he felt ill and Martinus allegedly called plaintiff a "f*cking faggot" and told him to "get the f*ck out of here then and go f*ck yourself". Am. Compl. ¶¶ 14, 21.  Plaintiff complained to defendant and a Human Resource investigation was initiated. Am. Compl. ¶ 23. On May 1, 2021, plaintiff submitted certification that he needed to take medical leave due to anxiety caused by his work conditions. Am. Compl. ¶ 24. On May 4, 2021, defendant advised plaintiff that its investigation did not produce corroborating evidence of harassment. Am. Compl. ¶ 29.

Plaintiff was to return to work on May 10, 2021 and asked that he be reassigned to avoid interaction with Martinus and his crew. Am. Compl. ¶ 26. Defendant agreed that plaintiff's request for reassignment was reasonable, and plaintiff was in constant contact with Construction Director Ruff regarding return dates and re-assignment. Am. Compl. ¶¶ 27, 30. However, plaintiff alleges that defendant refused to provide him with a realistic job position that would allow him to return to work. Am. Compl. ¶ 31. Instead, defendant informed plaintiff it considered him to have voluntarily resigned effective May 17, 2021.

On October 22, 2021, plaintiff filed his charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging sexual

harassment and retaliation. Plaintiff received a right to sue notice on March 25, 2022.

## LEGAL STANDARD

To survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999) (internal quotation marks omitted).

"Mere conclusions," however, "are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664. A plaintiff must provide "more than labels and conclusions," or "a formulaic recitation of the elements of a cause of action" to survive a motion to dismiss. *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

When ruling on a motion to dismiss, the court may "consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

ANALYSIS

I.   Discrimination – Hostile Work Environment

To establish a hostile work environment claim under both Title VII and the ELCRA, plaintiff must prove: (1) he is a member of a protected class, (2) he was subjected to unwelcome harassment, (3) the harassment was based on his sexual orientation, (4) the harassment created a hostile work environment, and (5) defendant knew or should have known about the harassment and failed to act. *Nathan v. Great Lakes Water Auth.*, 992 F.3d 557, 564–65 (6th Cir. 2021). Defendant argues that even after amending his complaint, plaintiff has failed to plausibly allege the fourth and fifth elements of his claim.

A hostile work environment occurs when the workplace is "permeated with discriminatory intimidation, ridicule, and insult" sufficiently severe or pervasive to alter the conditions of employment. *Harris v. Forklift Sys., Inc.*,

510 U.S. 17, 21 (1993) (citations omitted). This "severe or pervasive requirement has both an objective and subjective component." *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 707 (6th Cir. 2007). Courts are to consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance." *Id*.

     Plaintiff's amended complaint alleges that he was subjected to daily comments based on his sexual orientation, including, but not limited to, the 14 incidents contained in paragraph 14. Plaintiff describes frequent offensive verbal harassment by his supervisor and coworkers, as well as damage to his vehicle. In addition, he alleges that the pervasive nature of the harassment caused him stress and anxiety. While plaintiff's medical leave due to anxiety occurred following his confrontation with Martinus, he also alleges that his anxiety was caused by his work conditions generally. Am. Compl. ¶¶ 22, 24. At the pleading stage, plaintiff has plausibly alleged both the objective and subjective components of a hostile work environment.

     Plaintiff must also plausibly allege a basis for holding defendant liable for the hostile work environment. Here, plaintiff alleges two occasions when

he complained to management about the sexual harassment. The first complaint was made to Chad Ruff in February 2021, and the second complaint was made after the April 29, 2021 confrontation where Martinus allegedly called plaintiff a "f-ing faggot." In the case of a harassing supervisor, such as Martinus, the employer is vicariously liable for the hostile work environment. *Doe v. City of Detroit, Michigan*, 3 F.4th 294, 301 (6th Cir. 2021) (citing *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 348 (6th Cir. 2005)). However, when the harassment is committed by a coworker, the employer is liable only "if it knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action." *Id*. Defendant argues that in the February 12, 2021 complaint, plaintiff did not identify the offending coworkers by name, nor did he identify the dates that the alleged slurs were made. Given the lack of factual content, defendant contends that any lack of action on its part would not amount to manifest indifference. Furthermore, defendant points out that when plaintiff later raised a concrete complaint it investigated promptly. In evaluating whether plaintiff has plausibly pled that defendant had constructive knowledge of harassment, the Court finds that the allegations of pervasive harassment directed at plaintiff by his

coworkers and supervisor, together with the complaints plaintiff made to management, are sufficient to survive the motion to dismiss.

II.     Retaliation

Both Title VII and the Elliot-Larsen Civil Rights Act prohibit retaliation against employees who oppose discriminatory practices, including sexual harassment. 42 U.S.C. § 2000e-3(a); MICH. COMP. LAWS § 37.2701(a). To establish a prima facie case of retaliation, a plaintiff must show that: (1) he engaged in protected activity; (2) the defendant knew of the protected activity; (3) the defendant took an adverse employment action against him; and (4) there was a causal connection between the protected activity and the action. *Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000); *Nathan*, 992 F.3d at 371. Defendant contends that plaintiff has failed to plausibly allege the third and fourth elements of his prima facie case.

Plaintiff alleges that he requested to be reassigned so he would not have to interact with Martinus and his crew, and that defendant agreed this was a reasonable request. Plaintiff further alleges that he was in constant contact with Ruff regarding his reassignment to a new crew. However, plaintiff asserts that defendant did not provide him with a "realistic" job position to allow him to return to work, thus resulting in his constructive

discharge. Whether defendant had an obligation to offer plaintiff a reassignment depends on a determination of the facts. While plaintiff may or may not ultimately prevail on his retaliation claim, he has plausibly alleged that he suffered an adverse employment action.

The final element of plaintiff's prima facie retaliation claim is causation. To establish causation, a plaintiff must proffer evidence sufficient to raise the inference that that the adverse action would not have been taken had the plaintiff not engaged in protected activity. *Nguyen v. Cleveland*, 229 F.3d 559, 565 (6th Cir. 2000). Plaintiff relies on the close temporal proximity between his complaint on April 29 and his termination on May 17. While defendant is correct that temporal proximity alone is generally insufficient to support causation without other indicia of retaliatory motive, the determination involves issues of material fact and is not appropriate at the motion to dismiss stage. Plaintiff has plausibly raised the inference that his protected activity was the likely reason for the adverse action.

## CONCLUSION

For the reasons stated in this opinion and order,

IT IS HEREBY ORDERED that defendant's motion to dismiss (ECF No. 5) is DENIED.

Dated: November 10, 2022

                              s/George Caram Steeh
                              GEORGE CARAM STEEH
                              UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on November 10, 2022, by electronic and/or ordinary mail.

s/Brianna Sauve
Deputy Clerk